| | |
|---|---|
| 1 | Mike Rodenbaugh |
| | California Bar No. 179059 |
| 2 | Erin D. Vivion |
| | California Bar No. 262599 |
| 3 | RODENBAUGH LAW |
| | 548 Market Street |
| 4 | San Francisco, CA  94104 |
| | (415) 738-8087 |
| 5 | info@rodenbaugh.com |
| 6 | |
| | Attorneys for Plaintiff Vanity.com, Inc. |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| VANITY.COM, INC., a Nevada corporation, | : | Case No. 12-cv-02912-SI |
| Plaintiff, | : | **FIRST AMENDED COMPLAINT FOR:** |
| vs. | : | 1. Declaratory Judgment of no Trademark Infringement; |
| VANITY SHOP OF GRAND FORKS, INC., a North Dakota corporation, | : | 2. Declaratory Judgment of no Unfair Competition; |
| Defendant. | : | 3. Declaratory Judgment of no violation of the Anti-cybersquatting Consumer Protection Act; |
| | : | 4. Declaratory Judgment that Plaintiff is rightful holder of <Vanity.com> domain name; |
| | : | 5. Reverse Domain Name Hijacking per 15 U.S.C. § 1114(2)(D)(v); |
| | : | 6. Common Law Unfair Competition; and |
| | : | 7. Unfair Competition per Cal. Bus. & Prof. Code Sec. 17200 *et seq*. |
| | | **DEMAND FOR JURY TRIAL** |

First Amended Complaint - 1

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Vanity.com, Inc. ("Plaintiff"), by its attorneys, for its first amended Complaint, alleges:

**NATURE OF ACTION**

This action seeks a declaratory judgment that Plaintiff's registration and use of the domain name <vanity.com> (hereinafter "the Domain Name") does not constitute trademark infringement, unfair competition, or a violation of the Anti-cybersquatting Consumer Protection Act ("ACPA"), and that Plaintiff is the rightful registered name holder or registrant of the Domain Name. Plaintiff seeks to bar the transfer of the Domain Name to Defendant Vanity Shop of Grand Fork, Inc. ("Defendant"). This action also seeks relief for Defendant's bad faith actions constituting reverse domain name hijacking, common law unfair competition and unfair competition under California Business & Professions Code Sec. 17200, *et seq*.

**JURISDICTION AND VENUE**

1. Pursuant to 28 U.S.C. §§ 2201(a) and 2202, Plaintiff seeks a declaration and judgment regarding its rights and obligations in an actual controversy within this Court's jurisdiction, concerning Plaintiff's rights in and to the Domain Name. Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1331, giving this Court original jurisdiction in a civil action raising a federal question under 28 U.S.C. § 1338(a), the Lanham Act, 15 U.S.C. § 1051, *et seq*., and the ACPA, 15 U.S.C. § 1125(d), giving this Court original and exclusive jurisdiction in a civil action arising under the trademark and cybersquatting laws of the United States. Pendent jurisdiction exists over the state law claim.

2. This Court has personal jurisdiction over Defendant because it has sufficient contacts with the State of California and this judicial District subjecting it to the general and

specific personal jurisdiction of this Court pursuant to Cal. Code Civ. Pro. § 410.10. Defendant has purposefully availed itself to this forum through general business presence and by filing a Uniform Domain Name Dispute Resolution Policy ("UDRP") complaint against Plaintiff which resides in California, which has been decided in favor of Defendant, ordering the immediate transfer of the Domain Name if Plaintiff did not act by quickly filing a second lawsuit in the District of Arizona. This will result in the eventual transfer of the Domain Name, if such transfer is not ultimately prohibited by this Court.

3. Venue is proper in this Judicial District under 28 U.S.C §§ 1391, because the Court has personal jurisdiction over the Defendant and because Plaintiff's claims arise from Defendant's activities within and targeted at this District.

### THE PARTIES

4. Plaintiff Vanity.com, Inc. is a Nevada corporation formed in 2006, with its principal place of business in Los Altos, California.

5. Plaintiff and/or its principal have owned the vanity.com Domain Name since 1995.

6. Plaintiff owns a U.S. federal trademark registration, Registration number 3720766, for the Vanity.com trademark, filed from its California address on August 28, 2008 in connection with "On-line journals, namely, blogs featuring cosmetic procedures and surgery related content."

7. Plaintiff has a legitimate interest in the inherently valuable Domain Name, and has used the Vanity.com trademark and Domain Name in various non-infringing manners *for over seventeen years*, without any bad faith towards Defendant.

8. Upon information and belief, Defendant Vanity Shop of Grand Fork, Inc. is a North Dakota Corporation with its principal place of business in North Dakota.

9. Upon information and belief, Defendant is a low-budget specialty retailer that offers and sells various affordable apparel and accessory goods under the "Vanity" and "Vanity"-formative trademarks, and has procured U.S. federal trademark registrations in connection with such goods and retail services.

10. Upon information and belief, since at least 2008, Defendant has operated a highly interactive website at the "evanity.com" domain name, registered in 2004.

11. Defendant has asserted a meritless legal claim against Plaintiff's rightful property, the Domain Name. This has created an actual case and controversy for adjudication by the federal courts.

12. Plaintiff has filed a similar action in the District of Arizona on July 3, 2012, styled *Vanity.com, Inc. v. Vanity Shop of Grand Fork, Inc.*, CV-12-01446 (JAT), seeking the same relief on essentially the same claims as asserted herein.

13. Plaintiff was required to file also the District of Arizona in order to preserve ownership of its rightful property, the Domain Name, as the District of Arizona was unilaterally chosen by the Defendant pursuant to the UDRP, solely for the purpose of making it more costly for Plaintiff to challenge the UDRP decision. If Plaintiff did not file the Arizona action, then the Domain Name registrar would transfer the Domain Name to Defendant pursuant to the terms of the UDRP.

14. Upon filing the Arizona action, Plaintiff notified GoDaddy of same, which, pursuant to the UDRP, prevented the immediate transfer of the Domain Name. Instead, the status quo will be maintained until the Plaintiff and Defendant resolve their dispute before the appropriate federal court, here, in the Northern District of California.

15. Meanwhile, on August 15, 2012, Plaintiff sought a stay of proceedings before the Arizona court, so that the ongoing federal action in this District can proceed to resolve this dispute between the parties.

First Amended Complaint - 4

**Rodenbaugh Law**
548 Market Street
San Francisco, CA 94104
415.738.8087

**FACTUAL BACKGROUND**

Introduction

16. Domain Names are not simply Internet Protocol addresses that point and direct Internet users to their desired destination; they are also valuable pieces of intellectual property that many liken to the new "real estate" of our burgeoning virtual society. Domain name and website development is a legitimate and important, multi-billion dollar industry.

17. Recently, many overreaching trademark owners have sought to capitalize on this thriving market by using weak marks to take advantage of the administrative system set up by ICANN (the California corporation that administers the Domain Name System ("DNS")), and swipe valuable descriptive, generic, geographic, keyword and/or dictionary domain names away from their rightful owners.  These abusive filings under ICANN's Uniform Dispute Resolution Policy ("UDRP") are threatening meaningful development of domain name and Internet investment and innovation.

18. Such is the situation that is before the Court in this Complaint.

19.  On May 15, 2012, Defendant filed a UDRP complaint against Plaintiff regarding the Domain Name.

20. In the UDRP complaint, despite Plaintiff's legitimate registration and use of the Domain Name for over seventeen years, despite Plaintiff's federal trademark registration for VANITY.COM, despite Plaintiff's legitimate use of the domain name to offer email and information services, and despite Plaintiff's longstanding and public efforts to develop the domain name into a commercial service website, the Defendant alleged that Plaintiff has no rights or legitimate interests in the Domain Name and has registered and used it in bad faith, in a manner likely to confuse consumers as to the source of Defendant's services.

21. Plaintiff responded to the UDRP complaint by filing a Declaratory Judgment action here, in the Northern District of California, as described above. Plaintiff notified the National Arbitration Forum of this civil action and requested a dismissal or stay of the UDRP proceeding. Plaintiff presented evidence of its ownership of the domain name for 17 years, and of its U.S. trademark registration, and argued that this dispute is between two legitimate trademark owners and therefore is not appropriate for the UDRP. Moreover, since the UDRP decision is reviewed *de novo* by any federal court, Plaintiff sought to avoid duplicative and potentially inconsistent litigation. Alternatively, Plaintiff argued that it should be given ten more days to respond to the Complaint, if the Forum would not stay or dismiss the proceedings in light of the civil action in California.

22. The Forum's panelist ignored the latter request completely, and refused to stay or dismiss the proceedings without any reasoning whatsoever for such refusal.

23. The panelist, in foolishly determining that Plaintiff lacks legitimate interest in the Domain Name and registered it in bad faith, "reasoned" as follows:

   a. "[E]ven though the Panel finds that the WHOIS information appears to indicate that Respondent is commonly known by the disputed domain name, the Panel concludes that Respondent is not commonly known by the <vanity.com> domain name under Policy ¶ 4(c)(ii)."

   b. "Complainant states that Respondent resolves the <vanity.com> domain name to a commercial website offering information, blogs, chat groups, and social media links on beauty, fashion, health, and self topics. Nonetheless, the Panel finds that Respondent is not engaging in a bona fide offering of goods or services under Policy ¶ 4(c)(i) or a legitimate noncommercial or fair use of the <vanity.com> domain name under Policy ¶ 4(c)(iii)."

First Amended Complaint - 6

Rodenbaugh Law
548 Market Street
San Francisco, CA 94104
415.738.8087

24. As a result of this panelist's grossly negligent determination, the Defendant has obtained an order from the National Arbitration Forum, directing the transfer of the Domain Name to Defendant, thus mandating the taking from Plaintiff of its rightful property.

25. Under the provisions of the UDRP, via Defendant's unilateral forum selection, the Domain Name would be transferred to Defendant ten business days from notification of the decision to Plaintiff, unless Plaintiff files an action in court in the District of Arizona to overturn the arbitration decision.

26. In addition to filing the UDRP action, mirroring a claim under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), Vanity Shop's counsel specifically suggested in a phone call with Plaintiff's counsel on June 1, 2012 that Defendant was inclined to sue Plaintiff for trademark infringement. That phone call precipitated Plaintiff's filing of this civil action in California.

### The Registration

27. Plaintiff registered the Domain Name in good faith in 1995, long before the UDRP arbitration process was envisioned or enacted in 2000.

28. Vanity is a common English word, and has obvious inherent, valuable meaning as a trademark for almost any business. There are some 114 active USPTO trademark records for Vanity-formative marks in various industries, including Plaintiff's trademark registration for Vanity.com, filed in 2008.

29. Moreover, the Domain Name is the quintessential vanity domain name for any corporation or individual engaged in the multi-billion dollar domain name industry, giving it even greater inherent and non-infringing market value. Indeed, at one time, Plaintiff provided more than 50,000 "user@vanity.com" email addresses to different internet users. The Domain Name is reasonably valued far in excess of $100,000.

30. Since registering the Domain Name in 1995, Plaintiff and its principal have made continuous, demonstrable efforts to commercialize the inherent value of the Domain Name, and otherwise have ensured to maintain control of this valuable property asset.

31. The registration and use of domain names comprised of generic, geographic, descriptive, keyword and/or dictionary terms is widely recognized as a good faith use.

32. Plaintiff did not register the Domain Name with the intent to sell it to Defendant, nor to disrupt the Defendant's business, nor to confuse consumers trying to find the Defendant's website. At the time Plaintiff's principal registered the Domain Name in 1995, the Defendant was a tiny retail operation in North Dakota which did not even have a website.

## The Weak Mark

33. The term "Vanity" is a dictionary word in English. It is commonly used in entertainment titles, for example as the name of musical groups or songs. It is a furniture unit commonly found in bedrooms and bathrooms. Perhaps most commonly, it is used as a noun to refer to a person's sense of self-worth and beauty.

34. The word is used by many different businesses in their trademarks across many various industries. These further include VANITY trademark registrations at the USPTO for fresh fruit and vegetables by A. Duda & Sons alleging use since 1936, for luggage by Samsonite alleging use since 2004, for wines by Wicked Wines alleging use since 2006, for tobacco by Serena S.R.L. based on foreign rights, and for restaurants, nightclubs and bars by HRHH IP, LLC, alleging use since 2009.

35. Defendant does not own and cannot rightfully claim exclusive rights to use of the word Vanity, as used in a domain name, trademark or otherwise.

First Amended Complaint - 8

Rodenbaugh Law
548 Market Street
San Francisco, CA 94104
415.738.8087

Defendant's Activities That Create a Justiciable Controversy

36. On May 15, 2012, Defendant, via its counsel, filed a UDRP Complaint with the National Arbitration Forum ("NAF").

37. In the UDRP complaint, Defendants alleged that the Domain Name is confusingly similar to Defendant's trademark, that Plaintiff has no legitimate rights to or interest in the Domain Name, and that Plaintiff registered and is using the Domain Name in bad faith.

38. In the UDRP complaint, Defendant requested the remedy of transfer of the Domain Name. As discussed above, Plaintiff requested that the arbitration provider (the National Arbitration Forum, in Minnesota ("NAF")) dismiss or in the alternative, stay its proceedings in lieu of this Court's determination of Plaintiff's rights in the Domain Name.

39. Nevertheless, a NAF panelist ignored that request, and in a grossly negligent decision, ordered that the Domain Name be transferred from Plaintiff to Defendant.

40. In order to protect its valuable property, Plaintiff was forced to bring an action in the Arizona court so that the Domain Name registrar would not transfer the name, as it otherwise is required to do under its contract with ICANN, per the terms of the UDRP.

41. Plaintiff sought to maintain the status quo, and in particular its ownership of the valuable Domain Name, until the appropriate federal court here in Northern California can adjudicate the rights of the parties, as each party is a federal trademark registrant with a legitimate interest in use of its VANITY marks.

42. Plaintiff further seeks damages and the recovery of its attorneys' fees that have resulted from Defendant's unfair competition for the Domain Name, behavior constituting Reverse Domain Name Hijacking pursuant to the ACPA, and from Defendant's otherwise abusive and illegal behavior.

### Defendants' Activities that Create a Claim for Unfair Competition

43. Plaintiff realleges all of the foregoing paragraphs of this Complaint.

44. Defendant's activities towards Plaintiff constitute unfair competition under common law and pursuant to Cal. Bus. & Prof. Code § 17200, *et seq*. Defendant's activities are unlawful, unfair and fraudulent; they constitute an illegitimate attempt to obtain Plaintiff's property without just compensation, and an illegitimate attempt to enforce trademark rights far beyond any reasonable interpretation of same.

45. These activities are unlawful, unfair and fraudulent insofar as third parties may believe Defendant's assertions, and Plaintiff's reputation and business is likely to suffer accordingly.

46. Moreover, these activities cast a legal cloud on Plaintiff's title to its valuable Domain Name property, rendering such property more difficult if not impossible to sell for its full market value, and thus effectively disabling such property. This obviously causes economic harm to Plaintiff.

## COUNT I: CLAIM FOR DECLARATORY RELIEF

47. Plaintiff realleges all the foregoing paragraphs of this Complaint.

48. Plaintiff rightfully registered and has used the Domain Name in good faith, and with neither knowledge of Defendant's mark, nor intent to sell the Domain Name specifically to Defendant. Plaintiff had no intention of diverting any traffic from Defendant's website, and avers that there is no evidence that such has occurred.

49. In registering the Domain Name, Plaintiff had a legitimate interest in the inherent, generic value of the Domain Name and has used the Domain Name consistently with such purpose.

50. VANITY is a common, generic word. Defendant's putative rights in the VANITY mark are far from exclusive; they are weak and narrowly confined to various goods

and retail services. Defendant has no exclusive right to the use of the term "Vanity" as a trademark or otherwise.

51. Plaintiff believed and had reasonable grounds to believe, based on the market for generic domain names, as well as prior legal decisions and decisions under the UDRP and the ACPA (and their predecessor case law, to the extent any existed in 1995), that the registration and use of the Domain Name as a generic word and in connection with non-infringing business endeavors was lawful.

52. For more than seventeen years, Plaintiff has had quiet enjoyment of her property in good faith, never hearing any complaint from Defendant or anyone else about her ownership of the Domain Name.

53. Now Defendant's counsel has filed an administrative action, contending essentially that Plaintiff used the Domain Name in violation of anti-cybersquatting and unfair competition laws. Defendant's counsel has further suggested that a 'cease and desist' notice and federal lawsuit are imminent.

54. Defendant's agent filed the UDRP complaint, contending that Plaintiff registered and used the Domain Name in bad faith.

55. The UDRP provides that administrative panel decisions may be stayed, and that subject domain name disputes may be resolved in a court of competent jurisdiction – regardless of the UDRP panelists' findings. The federal courts have held that such review is to be made *de novo*.

56. A justiciable controversy exists between Plaintiff and Defendant.

57. To resolve this actual controversy, Plaintiff seeks a declaration and judgment that its registration and use of the Domain Name is with the legitimate interest of exploiting its inherent value as a generic term, and/or is consistent with documented legitimate business efforts, and constitutes good faith use. Plaintiff seeks to remove the legal

First Amended Complaint - 11

cloud over title to Plaintiff's valuable property, which has been created by Defendant's actions.

### COUNT II:  INJUNCTIVE RELIEF & DAMAGES PURSUANT TO 15 U.S.C. s 1114(2)(D)(v)

58. Plaintiff realleges all the foregoing paragraphs of this Complaint.

59. The ACPA, 15 U.S.C. s 1114(2)(D)(v), provides that a domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter.

60. The ACPA, 15 U.S.C. s 1114(2)(D)(v), provides that the court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

61. Injunctive relief is appropriate in this action to prevent the reverse domain name hijacking engaged in by Vanity Shops.

62. Pursuant to 15 U.S.C. § 1114(2)(D)(iv), if a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's fees, incurred by the domain name registrant as a result of such action.

63. The decision of the NAF effectively disables Plaintiff's domain name property by creating a legal cloud to Plaintiff's title thereto.  The decision  was conceived from the knowing and material misrepresentations of Defendant.  The decision has resulted in Plaintiff incurring damages, including without limitation attorneys' fees and costs, to address the disablement of Plaintiff's domain name property.

# COUNT III: CLAIM FOR COMMON LAW UNFAIR COMPETITION

64. Plaintiff realleges all the foregoing paragraphs of this Complaint.

65. Defendant has filed a UDRP complaint in Minnesota, and suggested it would file a civil action (presumably in North Dakota) contending that Plaintiff used the Domain Name in violation of anti-cybersquatting, trademark and unfair competition laws.

66. Defendant's wrongful and baseless accusations of infringement, and the UDRP panelist's consequent, grossly negligent transfer order, have created a cloud on Plaintiff's title to the Domain Name.

67. As a result of Defendant's past and continued wrongful acts, Plaintiff has incurred damages in an amount to be proved at trial, including compensation for Plaintiff's time, effort and attorneys' fees in defending against Defendant's baseless claims.

# COUNT IV: CLAIM FOR UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE SEC. 17200

68. Plaintiff realleges all the foregoing paragraphs of this Complaint.

69. Defendant's wrongful acts, as described in this Complaint, are unlawful, unfair and fraudulent, and cause damage to Plaintiff and injure its business, in violation of section 17200 of the California Business and Professions Code.

70. As a result of Defendant's past and continued wrongful acts described herein, Plaintiff has incurred damages in an amount to be proved at trial, including compensation for Plaintiff's time, effort and attorneys' fees in defending against Defendant's baseless claims.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a. a declaration that Plaintiff has not infringed and is not infringing the trademark rights of Defendant;

First Amended Complaint - 13

Rodenbaugh Law
548 Market Street
San Francisco, CA 94104
415.738.8087

    b.  a declaration that Plaintiff has not violated and is not violating unfair competition law;

    c.  a declaration that Plaintiff has not violated and is not violating the ACPA;

    d.  a declaration that Plaintiff registered and has used the Domain Name in good faith and is the rightful registrant of the Domain Name;

    e.  an injunction against Defendant, enjoining further attempts to hijack Plaintiff's domain name property;

    f.  a finding awarding Plaintiff monetary compensation for damages sustained by Defendant's wrongful actions as alleged in this Complaint;

    g.  an award of reasonable attorneys' fees and expenses; and,

    h.  such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests that all issues in this case be decided by a jury.

Dated:      August 16, 2012           RODENBAUGH LAW

By: /s/ Mike Rodenbaugh

Mike Rodenbaugh
RODENBAUGH LAW
584 Market Street
San Francisco, CA  94104
Tel/fax:  (415) 738-8087

Attorneys for Plaintiff
Vanity.com, Inc.